IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:26-CV-2649-D |
| | § | |
| TRANS UNION, LLC, | § | |
| AMANDA LOUGHMILLER, and | § | |
| QUILLING, SELANDER, LOWNDS, | § | |
| WINSLETT & MOSER, P.C., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, *pro se* plaintiff Kimberly Johnson ("Johnson") sues defendants Trans Union, LLC, Amanda Loughmiller, Esquire ("Loughmiller"), and Quilling, Selander, Lownds, Winslett & Moser P.C. ("QSLWM"), seeking to recover under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted and to stay this case pending a ruling on their motion to dismiss. For the reasons that follow, the court grants the Rule 12(b)(6) motion in part and denies it in part and denies the motion to stay, without prejudice.

I

Johnson sues Trans Union based on claims arising from its duties as a credit reporting agency under the FCRA.[1] On March 23, 2026 Johnson contested a tradeline entitled, "Security Finance Corporation Account No. 130964****." Pet. (ECF No. 1-3) at 5-6. She requested a reasonable reinvestigation under the FCRA. Trans Union reinvestigated and reported that the information was "verified as accurate." *Id.* at 6 (uppercase font omitted). The verified information is as follows:

1. Johnson opened the Security Finance Corporation Account on October 3, 2025.
2. Johnson owed $150 per month for a ten-month term.
3. Johnson had paid 0$, and the account was at least 120 days past its due date.
4. In March and April 2026, the account's current balance was $1,560 and its high balance was $1,104.
5. The amount past due was $640 in March and $800 in April.
6. There was no information listed between October 2025 and February 2026.

*Id.* at 7.

After verification, Johnson requested a "Description of Reinvestigation Procedure" and a "Complete Consumer File Disclosure." *Id.* at 38. Regarding the latter request, Johnson

---

[1]The court construes Johnson's state-court petition in the light most favorable to her as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review is limited to the [petition], any documents attached to the [petition], and any documents attached to the motion to dismiss that are central to the claim and referenced by the [petition]." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

included a long list of specific requests[2] and stated that Trans Union was not to "provide only a standard 'credit report' if that document does not include all information in my file as defined by 15 U.S.C. § 1681a(g)[.]" *Id.* at 40-41.

Trans Union responded to both of Johnson's requests in documents dated May 8, 2026. *Id.* at 39, 42.[3] In response to the request for a description of reinvestigation, Trans

---

[2]

> 1. All information in my TransUnion file at the time of this request; 2. All account information, including payment history, ratings, balances, past-due amounts, terms, dates opened, dates closed, charge-off dates, date of first delinquency/removal dates, remarks, historical trended data, and furnisher information; 3. All personal identifying information recorded and retained by TransUnion, including names, addresses, telephone numbers, dates of birth, Social Security number variations, employment information, and any other identifying information; 4. All inquiries, including regular inquiries, account review inquiries, promotional inquiries, soft inquiries, and any other inquiries recorded and retained in my file; 5. The sources of the information of in my file, to the extent required by the FCRA; 6. Identification of each person or entity that procured a consumer report concerning me within the time periods required by the FCRA; 7. Any public-record, collection, third-party supplemental, fraud, security freeze, dispute, statement, or consumer-message information recorded and retained in my file.

*Id.* at 40.

[3]At this point, the petition's timeline becomes unclear. Johnson alleges that she received a response to these requests on May 8, 2026. But attached to the petition is a May 11, 2026 email from Loughmiller, an attorney at QSLWM. This email has two attachments: "Letter [REDACTED] Dispute Process.pdf" and "Letter Request Unclear." *Id.* at 43 (bold font omitted). Johnson does not address whether these attachments are the same documents that are dated May 8, 2026.

Union described its general investigation process on a standard form.[4] And in response to the request for consumer file disclosure, Trans Union stated: "we were unable to process your request because we couldn't determine the nature of your request, or the information provided was unclear or illegible." *Id.* at 42. Johnson alleges that both responses were improper.

Aside from the responses dated May 8, 2026, Loughmiller, an attorney at QSLWM, communicated with Johnson on Trans Union's behalf in a series of other emails that allegedly contained Johnson's credit information. Loughmiller and QSLWM had previously represented Trans Union in a dispute with Johnson. But in this separate instance, Johnson asked Loughmiller to "cease communication with me unless the communication is about a complaint in which you are counsel for." *Id.* at 44. Loughmiller did not cease communicating.

Thereafter, Johnson brought the instant suit alleging the following FCRA claims:

> (1) Trans Union failed to conduct a reasonable reinvestigation, under § 1681i;
>
> (2) Trans Union failed to provide an adequate description of the reinvestigation, under § 1681i;
>
> (3) Trans Union failed to disclose Johnson's complete consumer

---

[4]Furthermore, adding to the confusion, attached to the petition is an additional email from Loughmiller to Johnson on June 9, 2026 with an attachment entitled, "Johnson reinvestigation results." The email states that these are the "reinvestigation results from [Johnson's] May 8, 2026 dispute to Trans Union." The contents of this attachment seem unaddressed in the petition, despite its obvious centrality to a claim that Trans Union failed to reinvestigate properly.

file, under § 1681g;

(4) Trans Union improperly routed Johnson's consumer report to Loughmiller and QSLWM, under § 1681b and § 1681e;

(5) Loughmiller and QSLWM impermissibly obtained Johnson's consumer report under § 1681b and § 1681n(a)(1)(B); and the foregoing was done

(6) negligently under § 1681o or

(7) willfully under § 1681n.

Defendants now move under Rule 12(b)(6) to dismiss all but Johnson's § 1681o negligence claim. Johnson opposes the motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff['s] [petition] by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (final alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court turns first to Johnson's § 1681i claims that Trans Union failed to conduct a reasonable reinvestigation and failed to provide an adequate description of the reinvestigation.

A

To prevail on either claim under § 1681i, Johnson must plausibly plead "that [her] consumer reports included inaccurate information." *McDonald v. Equifax Inc.*, 2017 WL 879224, at *6 (N.D. Tex. Mar. 6, 2017) (Boyle, J.) (internal quotation marks omitted) (quoting *Norman v. Experian Info. Sols., Inc.*, 2013 WL 1774625, at *4 (N.D. Tex. Apr. 25, 2013) (Boyle, J.)); *Brown v. EPIC Fed. Credit Union*, 2026 WL 1847501, at *6 (E.D. La. June 26, 2026). "The Fifth Circuit defines 'inaccurate information' for the purposes of the FCRA as information that is either (1) 'patently incorrect' or (2) 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Huggins*

*v. Trans Union, L.L.C.*, 2023 WL 3361202, at *3 (N.D. Tex. May 10, 2023) (Brown, J.) (quoting *Sepulvado v. CSC Credit Servs. Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). "Mere imprecision does not render information inaccurate." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F.Supp.2d 786, 798 (N.D. Tex. 2014) (Lynn, J.) (accepting findings and recommendation of magistrate judge) (quoting *Toliver v. Experian Info. Sols., Inc.*, 973 F.Supp.2d 707, 714 (S.D. Tex. 2013)); *see also Wagner v. TRW, Inc.*, 139 F.3d 898 (5th Cir. 1998) (per curiam) (noting "distinction between 'accurate information' and 'maximum possible accuracy.'").

Accordingly, at the pleading stage, "[w]hether a report includes inaccurate information requires more . . . than a plaintiff concluding, without further factual elaboration, that information is inaccurate, and, so 'courts routinely dismiss Section . . . 1681i claims . . . that do not specify specific misstatements and explain why they were incorrect.'" *Morrell v. Experian Info. Sols. Inc.*, 2026 WL 1378596, at *5 (N.D. Tex. Apr. 30, 2026) (Horan, J.), *report and rec. adopted*, 2026 WL 1701016 (N.D. Tex. June 11, 2026) (Lindsay, J.) (quoting *Rogers v. Equifax Info. Servs., L.L.C.*, 2024 WL 2862363, at *2 (E.D.N.Y. June 6, 2024)).

B

Johnson has failed to plausibly plead that her consumer report included inaccurate information. Johnson maintains that her report was inaccurate in two respects: first, that it contained internal inconsistencies; and, second, that it omitted information from the five months before March 2026.

1

Alleging internal inconsistencies alone is insufficient to plausibly plead that information is inaccurate. *Williams v. Equifax Info. Servs. L.L.C.*, 2024 WL 3237174, at *5 (N.D. Tex. June 5, 2024) (Horan, J.) ("inconsistency between the reported last payment date and the concurrent past due status" alone was insufficient to show that the information was "factually incorrect"), *report and rec. adopted*, 2024 WL 3241359 (N.D. Tex. June 28, 2024) (Boyle, J.); *see also Stuart v. Sallie Mae, Inc.*, 2026 WL 2970646, at *3 (C.D. Cal. Oct. 1, 2026); *but see Burches v. Equifax Info. Servs., L.L.C.*, 2026 WL 1413072, at *6 (E.D. La. May 20, 2026). Instead, a plaintiff can allege additional facts showing that the information was "patently incorrect," rather than merely inconsistent. *Huggins*, 2023 WL 3361202, at *3; *see Stuart*, 2026 WL 2970646, at *3-4.

Allegations that have been deemed sufficient to make this showing include that the plaintiff made unreported "timely payments[,]" had "paid off" accounts, "denied that [she] owed . . . money," or facts indicating "some other reason" that the listed information was incorrect. *Stuart*, 2026 WL 2970646, at *4; *Davidson v. Texan Credit Corp.*, 2025 WL 1914397, at *5 (N.D. Tex. Apr. 28, 2025) (Horan, J.), *report and rec. adopted*, 2025 WL 1625353 (N.D. Tex. June 9, 2025) (Pittman, J.). In essence, a plaintiff's "failure to plead the 'correct' information, while simultaneously asserting reporting inaccuracies, is a fatal flaw" to a claim that information is "patently incorrect." *Poindexter v. Equifax Info. Servs., LLC*, 2026 WL 1181801, at *4 (W.D. Va. Apr. 30, 2026); *see also Frink v. Experian Info. Sols., Inc.*, 2026 WL 1181101, at *4-5 (S.D. Fla. Mar. 13, 2026) (holding on summary judgment

motion that "facially inconsistent . . . reporting" was not a "verifiable inaccuracy" without additional evidence).

Alternatively, a plaintiff can show how the "inconsistency was misleading in such a way that it could be 'expected to have an adverse effect,' as is required to state a claim." *Gutierrez v. Experian Info. Sols. Inc.*, 2026 WL 1591096, at *2 (S.D. Tex. June 3, 2026) (Rosenthal, J.) (quoting *Cruel v. Experian*, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023); *see also Davidson*, 2025 WL 1914397, at *5 (evaluating whether "difference[s] in reporting . . . the amount owed on a valid loan" could be "expected to adversely affect a credit decision."). This showing is especially difficult when the inconsistencies concern, at most, "a few hundred dollars." *Davidson*, 2025 WL 1914397, at *5.

Johnson alleges the following internal inconsistencies: first, that the high balance listed on the account ($1,104) was lower than the current balance ($1,560); and, second, that the amount past due on the account increased by $160 between March and April instead of the listed $150 owed per month. Johnson contends that these "cannot be reconciled" and are "sufficient to plead an inaccuracy[.]" Pet. (ECF No. 1-3) at 6; P. Resp. (ECF No. 8) at 5. The court disagrees.

Nowhere does Johnson allege the " 'correct' information[,]" i.e., the real balance and monthly payment amount, or include any allegations that otherwise enable the court to draw reasonable inferences about whether the listed information was "patently incorrect." *See Poindexter*, 2026 WL 1181801, at *4. She "never denies that she owed [Security Finance Corporation] money[,]" never alleges that she made any unreflected payments, and,

therefore, "never alleges *how*" the listed information is inaccurate. *Davidson*, 2025 WL 1914379, at *5 (emphasis added). Thus the "inconsistenc[ies] . . . stop short of alleging a plausible entitlement to relief." *Williams*, 2024 WL 3237174, at *5; *see also Johnson v. Equifax Info. Servs. L.L.C.*, 2026 WL 2035425, at *5 (D. Md. July 15, 2026) (dismissing claim when plaintiff merely alleged that "reported facts are facially inconsistent and cannot logically coexist" because it was not "not apparent how these alleged inconsistencies impact[ed] the accuracy of her credit report").[5]

Similarly, Johnson has not plausibly pleaded that the "inconsistency was misleading in such a way that it could be 'expected to have an adverse effect,' as is required to state a claim." *Gutierrez*, 2026 WL 1591096, at *2 (quoting *Cruel*, 2023 WL 4140828, at *3); *Johnson*, 2026 WL 2035425, at *5 (lone allegation that "reported facts are facially inconsistent and cannot logically coexist" was insufficient to show that information was "misleading such that it could be expected to have an adverse effect on Johnson."). Johnson's allegations show a $10 difference in monthly payments and a "high balance" that is $500 *lower* than her current balance. Pet. (ECF No.1-3) at 7. This "difference in reporting of, at the most, a few hundred dollars between the amount owed on a valid loan over a period of several months is certainly not . . . misleading in such a way that it can be expected to adversely affect a credit decision." *Davidson*, 2025 WL 1914397, at *5.

---

[5]This case illustrates why plaintiffs are required to allege precisely how inconsistent information is incorrect. Depending on which version is true, Johnson could *benefit* from a credit file that reports her balance and payment amounts as lower than they actually are. It is questionable whether such a scenario can be the basis for a plausible FCRA claim.

Therefore the alleged inconsistencies on the credit report are insufficient to plausibly plead that the information in the credit report was inaccurate.

2

The court now considers whether the omissions in the account from October 2025 to February 2026 are sufficient to plausibly plead that the credit report was inaccurate.

"A credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020) (quoting *Sepulvado*, 158 F.3d at 895). Johnson merely alleges that the "reporting was internally incomplete . . . because Trans Union . . . failed to report the corresponding monthly balance, scheduled-payment, amount-paid, and past-due dollar fields" between October 2025 and February 2026. Pet. (ECF No. 1-3) at 7. But this is only inaccurate for an FCRA claim if the "omission renders the report misleading." *Hammer*, 974 F.3d at 568. As explained above, Johnson has not alleged that these omissions fail to reflect positive action that she took toward the account, as if she had met her monthly payment obligations. *See supra* § III(B)(1). Instead, the account—read as a whole—reflects that she failed to make payments each month and has accrued a total balance in line with that progressive delinquency. The petition does not allege contrary facts. Thus Johnson has not plausibly pleaded that these omissions were material.

C

Accordingly, because Johnson has not plausibly pleaded that her consumer reports

included inaccurate information, the court grants defendants' motion to dismiss her claims under § 1681i.

IV

The court now turns to Johnson's claim that Trans Union failed to disclose her complete consumer file under § 1681g.

A

Section 1681g requires that consumer reporting agencies, on request, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of [her] request." The FCRA "broadly define[s]" file to mean "all of the information on th[e] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Kelly v. RealPage Inc.*, 47 F.4th 202, 206 (3d Cir. 2022); § 1681a. Therefore, "[t]o sufficiently allege a section 1681g claim," Johnson must plausibly plead that Trans Union "failed clearly and accurately to disclose all information in her file when requested." *Reed v. Equifax Info. Servs. L.L.C.*, 2026 WL 2874734, at *3 (N.D. Tex. Sept. 23, 2026) (Godbey, J.).

B

Johnson has plausibly pleaded a § 1681g claim. Johnson alleges that she sent a letter "requesting a complete disclosure of my consumer file pursuant to the Fair Credit Reporting Act, including 15 U.S.C. § 1681g and 15 U.S.C. § 1681a(g)." Pet. (ECF No. 1-3) at 40. Her letter included a long list of requested information and stated that Trans Union was not to "provide only a standard 'credit report' *if* that document does not include all information in

my file[.]" *Id.* (emphasis added). In response, Trans Union sent a letter that stated: "[w]e are unable to process your request because we couldn't determine the nature of your request[.]" *Id.* at 42. Trans Union continues to maintain this position. D. Br. (ECF No. 7) at 13-14 (stating that Johnson made a "non-sensical request" that could not "trigger a consumer disclosure under 15 U.S.C. § 1681g.").

The court holds that Johnson's request was sufficient to trigger Trans Union's obligation under § 1681g to "clearly and accurately [] disclose all information" in Johnson's file. *Reed*, 2026 WL 2874734, at *3. Trans Union's position that Johnson's request was non-sensical lacks merit. The part of the letter on which Trans Union focuses—"[p]lease do not provide only a standard 'credit report'"—must be read in tandem with the rest: "if that [credit report] does not include all information in my file[.]" D. Br. (ECF No. 7) at 13; Pet. (ECF No.1-3) at 40. Read in its entirety, Johnson's request that Trans Union not provide a credit report was operative *only if* a credit report alone would be under-inclusive. *See id.* And when combined with Johnson's clear invocation of § 1681g and her laundry list of requests, it is clear that Trans Union was obligated to "clearly and accurately [] disclose all information in her file[.]" *Reed*, 2026 WL 2874734, at *3. Its response did not do so. Pet. (ECF No.1-3) at 39 (stating that "we are unable to process your request").

Accordingly, the court denies Trans Union's motion to dismiss the § 1681g claim.

V

The court now addresses Johnson's claim under § 1681b that Loughmiller and QSLWM impermissibly obtained—and that Trans Union improperly routed—a consumer

report.

A

"The FCRA prohibits anyone from obtaining a consumer report without a permissible purpose." *Johnson v. Digital Fed. Credit Union*, 2025 WL 2773824, at *3 (N.D. Tex. Sept. 26, 2025) (Fitzwater, J.) (citing § 1681b(f)). A consumer report is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness[.]" § 1681a(d)(1). And "[a]lthough not explicit in the[] statutory definitions, numerous courts have concluded that . . . a 'consumer report' means a report disclosed to a third party." *Norman v. Lyons*, 2013 WL 655058, at *2 (N.D. Tex. Feb. 22, 2013) (Boyle, J.) (citing *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004), and *Scharpf v. AIG Mktg., Inc.*, 242 F.Supp.2d 455, 458 (W.D. Ky. 2003), and *Renniger v. Chexsystems*, 1998 WL 295497, at *5 (N.D. Ill. May 22, 1998)). "Accordingly, one cannot prove the existence of a 'consumer report' unless the report was furnished to a third party." *Id.*

But a defendant's counsel is not such a third party because she "is the legal agent of the client." *Id.* (quoting *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir. 1985)). "Thus, when the FCRA refers to 'third parties,' that term does not include counsel hired to represent the consumer reporting agency." *Id.* (citing *Hartman v. Lisle Park Dist.*, 158 F.Supp.2d 869, 876-77 (N.D. Ill. 2001). Therefore, sharing information with counsel cannot be the basis for a § 1681b claim. *Id.*; *Mostofi v. Experian Info. Sols., Inc.*, 2014 WL 3571804, at *2 (D. Md. July 18, 2014).

B

Johnson has not plausibly pleaded that her information was disclosed to a third party. The complaint alleges two instances where Loughmiller and QSLWM had access to Johnson's credit information: when Loughmiller sent the May 11, 2026 email with attachments entitled "Letter [REDACTED] Dispute Process.pdf" and "Letter Request Unclear"; and when Loughmiller sent the June 9, 2026 email with an attachment entitled "Johnson reinvestigation results." Pet. (ECF No.1-3) at 43-46 (bold font omitted). But on both occasions, Loughmiller and QSLWM were clearly acting as Trans Union's counsel. *Id.* ("Attached please find the attached from Trans Union" and "[a]ttached please find the reinvestigation results from your . . .dispute to Trans Union."). The court has no reasonable basis to draw an inference otherwise.

Johnson maintains that the court needs to resolve whether these communications were within the scope of the attorney-client relationship, which it cannot do on a motion to dismiss. The court disagrees.

First, it is clear from the complaint that Trans Union was "required to hire counsel to represent itself when [Johnson] sued . . . in the related [ongoing] case." *Norman*, 2013 WL 655058, at *3; *see Johnson v. Trans Union, L.L.C.*, 2026 WL 852186, at *1 (N.D. Tex. Mar. 2, 2026) (Starr, J.), *appeal docketed*, No. 26-10192 (5th Cir. May 5, 2026). And, second, Trans Union is entitled to appoint counsel to communicate with known litigious consumers,

even in the absence of an ongoing dispute.[6] The communications at issue were plainly made within the scope of either representation. Pet. (ECF No.1-3) at 43-46. Thus Johnson has not plausibly pleaded the existence of a consumer report.

Therefore, the court grants Trans Union's motion to dismiss Johnson's claims under § 1681b, § 1681e(a), and § 1681n(a)(1)(B).[7]

## VI

The court now turns to Johnson's claim under § 1681n that the alleged FCRA violations were done willfully.[8]

### A

"Under § 1681n of the FCRA, to act willfully means to knowingly and intentionally commit an act in conscious disregard for the rights of others." *Zala v. Trans Union, L.L.C.*, 2001 WL 210693, at *8 (N.D. Tex. Jan. 17, 2001) (Fitzwater, J.) (citing *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)). And in interpreting "willful" the "Supreme Court

---

[6]Johnson's lengthy history in this court underscores this point. *See, e.g.*, *Johnson v. Discover Prods., Inc.*, 2026 WL 2104428 (N.D. Tex. July 21, 2026) (Boyle, J.); *Johnson v. Trans Union*, 2026 WL 852186; *Johnson v. Discover Fin. Servs., L.L.C.*, 2025 WL 1071426 (N.D. Tex. Apr. 9, 2025) (Brown, J.); *Johnson v. Equifax Info. Servs. L.L.C.*, 2024 WL 5656589 (N.D. Tex. Dec. 26, 2024) (Fitzwater, J.); *Johnson v. Digital Fed. Credit Union*, 2025 WL 2773824 (N.D. Tex. Sept. 26, 2025) (Fitzwater, J.); *Johnson v. H&F Motors, Inc.*, 2022 WL 4227517, at *1 (N.D. Tex. Sept. 13, 2022) (Scholer, J.); *Johnson v. Midland Credit Mgmt.*, 2026 WL 2971779 (N.D. Tex. July 10, 2026) (Horan, J.). Trans Union cannot be precluded from appointing counsel to communicate with consumers known to frequently sue under the FCRA.

[7]The § 1681e(a) and § 1681n(a)(1)(B) claims are derivative of the § 1681b claims.

[8]Trans Union has not moved to dismiss Johnson's § 1681o negligence claim.

has held that 'reckless disregard of a requirement of [the] FCRA would qualify as a willful violation.'" *Ramirez v. Experian Info. Sols., Inc.*, 2026 WL 833868, at *4 (N.D. Tex. Mar. 26, 2026) (Pittman, J.) (quoting *Safeco Inc. Com. of Am. v. Burr*, 551 U.S. 47, 71 (2007)). "This standard requires a showing that 'the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (quoting same).

Generally, allegations sufficient to plausibly plead a § 1681n claim show that a defendant "has long known" that its conduct violated the FCRA, *Cook v. Equifax Info. Servs., L.L.C.*, 2026 WL 2358907, at *8 (S.D. Tex. July 17, 2026), *report and rec. adopted*, 2026 WL 2356741 (S.D. Tex. Aug. 13, 2026), or that it had "several years to comply" with evident FCRA violations and failed to do so, *Ticknor v. Rouse's Enters., LLC*, 2013 WL 12439006, at *6 (E.D. La. Mar. 26, 2013). By contrast, plaintiffs do not plausibly plead a § 1681n claim where they merely allege the underlying FCRA violation. *See Schultz v. HomeBridge Fin. Servs., Inc.*, 2025 WL 1467431, at *3 (5th Cir. May 22, 2025) (per curiam) (unpublished opinion). In essence, there must be additional "pleadings capable of supporting a finding on the requisite mental state[,]" i.e., that the defendant recklessly or knowingly "committed an act in . . . disregard for the rights of others." *Sanders v. JP Morgan Chase Bank N.A.*, 2025 WL 2792766, at *2 (W.D. Tex. Aug. 29, 2025), *report and rec. adopted*, 2025 WL 2785062 (W.D. Tex. Sept. 25, 2025).

B

Johnson has not plausibly pleaded that Trans Union wilfully violated the FCRA.[9] The only pertinent factual allegations are that Trans Union denied Johnson's consumer file request in the first place and that "Trans Union is a sophisticated national consumer reporting agency." Pet. (ECF No. 1-3) at 26. But these allegations, even taken as true, are "[in]capable of supporting a finding on [Trans Union's] requisite mental state." *Sanders*, 2025 WL 2792766, at *2. Therefore, Johnson has not plausibly pleaded that Trans Union wilfully violated the FCRA, and the court grants Trans Union's motion to dismiss Johnson's claims under § 1681n.

VII

Although the court is dismissing some of Johnson's claims, it will grant her leave to replead the claims under § 1681i and § 1681n. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.). Johnson filed this case in state court, under the pleading standards that govern in that forum. This court has adopted a nearly unwavering practice of permitting plaintiffs to replead under the federal pleading standards when it dismisses removed cases that were pleaded under state standards. *See, e.g.*, *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.) (granting similar relief in removed case). Moreover, as a *pro se* plaintiff, Johnson should be given a fair opportunity to plead her best case. *See, e.g.*, *Robinette v. Merrill Lynch, Pierce, Fenner*

---

[9]The court has dismissed all but Johnson's § 1681g claim for Trans Union's failure to disclose her consumer file. As such, this is the only claim analyzed under § 1681n.

*& Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding pro se."). Accordingly, the court grants Johnson 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

The court will not grant Johnson leave to replead her claims under § 1681b, § 1681e(a), and § 1681n(a)(1)(B). District courts do not afford plaintiffs an opportunity to cure pleading deficiencies where it is clear that the defects in the pleading are incurable. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In this case, Johnson's sole basis for recovery under § 1681b—that Trans Union sent information to its own legal counsel—is insufficient as a matter of law. Because repleading cannot cure this defect, the court dismisses these claims with prejudice, and without leave to replead.

VIII

The court finally turns to Trans Union's motion to stay. Trans Union's sole basis for the stay is that it would be prudent to await the court's ruling on the present motion to dismiss. Because the court has now decided the motion to dismiss, the motion to stay is denied, without prejudice.

* * *

For the reasons explained, the court dismisses Johnson's claims under § 1681i and § 1681n without prejudice; dismisses Johnson's claims under § 1681b, § 1681n(a)(1)(B), and

§ 1681e(a) with prejudice; declines to dismiss Johnson's claims under § 1681g and § 1681o; and denies defendants' motion to stay, without prejudice.

**SO ORDERED**.

November 2, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE